## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

Shirley Ann Knox                                                                      Plaintiff

v.                              No. 4:14-CV–034-JM-JTK

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          Defendant

### Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge

James M. Moody, Jr.  A party to this dispute may file written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  The objecting party must

serve the opposing party with a copy of an objection.  Failing to object within 14 days

waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Moody

may adopt the recommended disposition without independently reviewing all of the

record evidence.

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

## Reasoning for Recommended Disposition

Shirley Ann Knox seeks judicial review of the denial of her application for disability insurance benefits.[3]  Knox worked as an assembly line worker for Lennox Industries, manufacturing air conditioners, for 24 years.[4]  Up until 2009, Knox installed control boxes, a job that required Knox to lift.[5]  After undergoing right-shoulder surgery, Knox began working as a leak tester.  Knox could do that job using the left arm.  Knox continued working until January 12, 2011, when she went out on short-term disability.[6]  She then applied for social security disability benefits.  She based disability on back, shoulder, and neck problems; fibromyalgia; and chronic pain.[7]

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Knox has severe impairments — degenerative disc disease and a history of right-shoulder surgery[8] — but she could do some sedentary

---

[3]SSA record at p. 121.

[4]*Id*. at p. 148.

[5]Initially, Knox stated that her job required her to lift up to 20 pounds, *id*. at p. 149, but later testified that she lifted 40-45 pounds, *id*. at p. 44.

[6]*Id*. at p. 56 (testifying that she drew short-term disability benefits from Lennox for six months and then received long-term disability benefits).

[7]*Id*. at p. 136.

[8]*Id*. at p. 18.

work.[9]  The ALJ applied the borderline rule and determined that work existed that

Knox could do six months before she reached age 50, but not afterward.[10]  The ALJ

awarded benefits beginning on April 25, 2012 — six months before age 50 — and denied

the application for earlier benefits.

    After the Appeals Council denied review,[11] the ALJ's decision became the

Commissioner's final decision for the purpose of judicial review.[12]  Knox filed this case

to challenge the denial of earlier benefits.[13]  In reviewing the decision, the court must

determine whether substantial evidence supports the decision and whether the ALJ

made a legal error.[14]  This recommendation explains why substantial evidence supports

---

[9]*Id*. at p. 19.

[10]*Id*. at pp. 23-24.

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

the decision and why the ALJ made no legal error.

**Knox's allegations**.  Knox challenges the determination that she could do sedentary work before April 25, 2012.  She contends the ALJ disregarded her complaints of pain, and maintains the ALJ should have given her doctors' opinions controlling weight.  She suggests the ALJ should have ordered a mental diagnostic evaluation.  She claims the identified available work exists in such limited numbers that it should not be considered.  For these reasons, she maintains substantial evidence does not support the decision.[15]

**Age is important in this case because the ALJ limited Knox to sedentary work**.  Chronological age is one of the vocational factors considered in determining whether a claimant is disabled, because age affects a person's ability to adjust to other work.[16]  In general, the Commissioner does not consider the age of a person under age 50 as seriously affecting the ability to adjust to other work, but in some circumstances, the Commissioner considers a person between ages 45 and 49 as limited in the ability to adjust to other work.  The role of age in the "45 to 49" category depends "education and work experience, including any transferable skills or education providing for direct

---

[15]Docket entry # 12.

[16]20 C.F.R. §§ 404.1563(a) ("When we decide whether you are disabled…, we will consider your chronological age in combination with your residual functional capacity, education, and work experience.").

4

entry into skilled work."[17]  Age plays a greater role when the claimant reaches age 50, because "age along with a severe impairment(s) and limited work experience may *seriously* affect [the claimant's] ability to adjust to other work,"[18] such that the regulations direct a finding of "disabled" for a 50-year-old claimant, with Knox's education and work experience, who is limited to sedentary work.[19]

The special rules apply because the ALJ limited Knox to sedentary work and Knox was 27 days short of reaching age 50 when the ALJ issued the decision.  Under a strict application of the regulations, Knox would not receive the benefit of the special rules for people over age 50, but the ALJ gave her the benefit of the special rules by applying the borderline rule.  Under the borderline rule, the ALJ can consider and apply an older age category if the claimant is within a few days or a few months of reaching the older age category, and using the older age category would result in a determination that the claimant is disabled.[20]

"Exactly what constitutes a borderline situation is not defined by statute or

---

[17]20 C.F.R. pt. 404, subpt. P, app. 2, §§  201.00(h)(3).

[18]20 C.F.R. §§ 404.1563(d) & 416.963(d) (italics added).

[19]20 C.F.R. pt. 404, subpt. P, app. 2, § 201.14 (high school graduate with skilled or semiskilled work experience that does not transfer to other work).

[20]20 C.F.R. §  404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.").

regulation, other than the 'few days to a few months' language…,"[21] but 27 days is

sufficient.  The ALJ applied the rule, taking a generous approach,[22] and awarded

benefits beginning April 25, 2012, six months *before* Knox reached age 50.  As a result,

this review considers the 13-month time period between January 12, 2011 — the day

Knox claims she became disabled — and April 25, 2012 — six months before Knox

reached age 50.

   **Applicable legal principles**.  For substantial evidence to support the

determination during the challenged 13 months, a reasonable mind must accept the

evidence as adequate to show Knox could have done some sedentary work.[23]  Sedentary

work "involves lifting no more than 10 pounds at a time and occasionally lifting or

carrying articles like docket files, ledgers, and small tools."[24]  Sedentary work

"represents a significantly restricted range of work.  Individuals who are limited to no

more than sedentary work by their medical impairments have very serious functional

---

[21]*Phillips v. Astrue*, 671 F.3d 699, 703 (8th Cir. 2012).

[22]*Compare Byes v. Astrue*, 687 F.3d 913, 918 (8th Cir. 2012) ("eight months is too distant to be borderline") *with Phillips*, 671 F.3d at 703 (four months was enough under the circumstances to require ALJ to expressly consider borderline rule; lack of past relevant work might justify using higher age category).

[23]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[24]20 C.F.R. § 404.1567(a).

limitations."[25]  In this case, the ALJ reduced sedentary work by limiting occasional

overhead reaching and pushing/pulling with the right arm, due to right-shoulder

surgery.  The court must determine whether a reasonable mind would accept the

evidence as adequate to show Knox could have worked with these limitations during

the challenged 13 months.

**Substantial evidence supports the determination**.  Knox's primary complaint is

pain — in the back, neck, shoulders, and throughout her body.  According to Knox, she

experienced such constant, severe pain that she was unable to do anything during the

challenged 13 months.[26]  She reported that she did nothing.[27]  But Knox's allegations are

not enough to prove she was disabled; she must demonstrate disability with "medical

signs and findings, established by medically acceptable clinical or laboratory diagnostic

techniques, which show the existence of a medical impairment…which could

reasonably be expected to produce the pain or other symptoms alleged."[28]

---

[25]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[26]SSA record at pp. 136, 155, 168 & 177.

[27]*Id*. at pp. 47 & 181.

[28]42 U.S.C. § 423 (d)(5(A).  *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

**Evidence about the back supports the decision**.  Diagnostic imaging of the back is "completely normal."[29]  According to a back specialist, Knox was very aggravated to learn that her imaging was normal.[30]  The back specialist released her for work, explaining that no objective medical findings justified a lifting restriction beyond 25 pounds until she completed physical therapy.[31]  After completing physical therapy, the back provided no basis for a lifting restriction.  A reasonable mind would accept the evidence as adequate to support the determination because the imaging showed no abnormalities and her doctor saw no basis for a lifting restriction.  There is no evidence of nerve root compression, disc extrusion, canal stenosis, or foraminal stenosis, could support the alleged degree of pain and limitation.

**Evidence about the shoulders supports the decision**.  In 2009, diagnostic imaging showed an os-acromiale in both shoulders.[32]  When an os-acromiale is present, a person may experience pain with motion of a bony fragment, or a frozen shoulder when the bone "impinges" on the underlying rotator cuff tendon.  Depending on the size of a fragment, repetitive movement — like the control-box-installation job — could

---

[29]SSA record at p. 223.

[30]*Id*.

[31]*Id*. at p. 224.

[32]*Id*. at p. 300.

cause significant pain.[33]

Knox complained about pain in both shoulders, but more from the right shoulder.  A shoulder specialist removed the bony fragment in the right shoulder.[34]  It took some time for Knox to heal and regain mobility in her right shoulder, but she returned to work in a light-duty job that did not require frequent use of her right arm. Knox's decision not to undergo left-shoulder surgery, and the use of her left arm to work in a light-duty job, indicate the left shoulder posed little limitation.  A reasonable mind would accept the evidence as adequate to support the ALJ's determination because frequent, repetitive use of the right arm could cause shoulder pain and because the ALJ limited overhead reaching and pushing/pulling with the right arm.

**Evidence about the neck supports the decision**.  Knox began complaining about neck pain in 2008, but diagnostic imaging of the neck was negative.[35]  In September 2009, a spine specialist reported that Knox might have "some very minimal degenerative changes in the cervical spine," but nothing requiring treatment.[36]  The spine specialist attributed neck pain to the right shoulder and saw little in Knox's light-

---

[33]A.H Woodward, Laura Brasseur, Sherrie N. Simerman & David P. Simerman, 2-5 Attorneys' Textbook of Med. § 5.09[9] (3d ed.) (discussing impingement syndrome).

[34]SSA record at p. 334.

[35]*Id*. at p. 315.

[36]*Id*. at p. 434.

duty job that placed additional stress on the neck.[37]  According to the spine specialist,

Knox admitted her real plan: "she feels she cannot continue working at [her] job

anymore and she wants to know who to contact for disability."[38]  This case doesn't

implicate whether Knox could have done her light-duty job at Lennox; instead, it

considers whether she could have done a more limited range of work.

Knox continued to complain about neck pain, but her doctor released her for

light work after her shoulder surgery.[39]  According to the doctor, Knox has "chronic

pain but will have to learn to live with it."[40]  A reasonable mind would accept the

evidence as adequate to support the decision because no objective medical evidence

supports disabling neck pain.

**The evidence about fibromyalgia supports the ALJ's reduction to sedentary

work**.  In the absence of medical findings showing another reason for complaints of

chronic pain, fibromyalgia provides an explanation.  Fibromyalgia is the "inflammation

of the fibrous or connective tissue (muscles, joints, ligaments, and tendons) of the body.

---

[37]*Id*.

[38]*Id*.

[39]*Id*. at p. 228.

[40]*Id*. at p. 229.

It is characterized by muscle pain, fatigue, and multiple tender points on the body."[41]

Medical standards provide for a diagnosis of fibromyalgia if a patient has "widespread

pain in combination with tenderness in at least 11 of the 18 sites known as trigger

points."[42]

In November 2010, a rheumatologist found tenderness in 8 trigger points and

suspected fibromyalgia.[43]  A couple of weeks later, the rheumatologist diagnosed

fibromyalgia.[44]  "Fibromyalgia has no known cure.  Therefore, the goal of treatment is

successful symptom management."[45]  The rheumatologist prescribed various

medications and offered horizontal therapy.  Knox also began treatment with a pain

specialist.  The pain specialist prescribed pain medication and recommended epidural

steroid injections.  The prescribed treatment indicates Knox's symptoms can be

controlled.  "If an impairment can be controlled by treatment or medication, it cannot be

considered disabling."[46]  To the extent, Knox claims nothing relieves her symptoms, it is

---

[41]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, 3 The Gale
Encyclopedia of Med. 1728 (4th ed.).

[42]*Id*. at p. 1729.

[43]*Id*. at p. 282.

[44]*Id*. at p. 278.

[45]Paula Ford-Martin, Michele R. Webb & Laura Jean Cataldo, 3 The Gale
Encyclopedia of Med. 1729 (4th ed.).

[46]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

illogical to return to the same doctors if their care provides no relief.  But Knox did

return to the same doctors; she saw the rheumatologist and the pain specialist on a

regular basis for nine months.

After those nine months, there is no record of treatment.  Notably, there is no

evidence of treatment during the eight months preceding April 25 2012.  The lack of

treatment weighs against Knox's claim, because it suggests treatment either alleviated

her symptoms or resolved her symptoms.  It also suggests Knox over-stated her

symptoms.  Knox claims the ALJ ignored her testimony about pain, but pain was the

only evidentiary basis for the reduction to sedentary work.  "[T]he mere fact that

working may cause pain or discomfort does not mandate a finding of disability."[47]  A

reasonable mind would find the evidence as adequate to support the decision because

nothing shows Knox's symptoms caused serious functional limitations preventing

sedentary work.

**Medical opinion evidence conflicts, but is sufficient to support the decision**.

Agency medical experts reviewed Knox's treatment records and opined that Knox

could do sedentary work with limited use of the right arm.[48]  In contrast, the

rheumatologist and the pain specialist provided opinions, that if accurate, preclude all

---

[47]*Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996).

[48]SSA record at pp. 284 & 421.

12

work.  Treating-physician opinions are ordinarily entitled to special weight, but they do not automatically control because the ALJ must consider the record as a whole.[49]  The ALJ may give less weight to a treating-physician opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions that undermine the credibility of the discounted opinion.[50]  The ALJ did not give the treating-physician opinions special weight, so the question before the court is whether the ALJ had a sufficient evidentiary basis for not doing so.

**The rheumatologist's opinion is unsupported**.  The rheumatologist reported that Knox could not stand or walk for longer than 10 minutes, sit for more than one hour, or lift over 10 pounds.[51]  The ALJ gave great weight to the lifting restriction, but not to the walking, standing, and sitting restrictions "because they are unsupported by objective or clinical findings of impairments so severe as to cause such extreme limitations."[52]  The question is whether the walking, standing, and sitting restrictions warranted greater weight.

The walking, standing, and sitting restrictions did not warrant greater weight

---

[49]*Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).

[50]*See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

[51]SSA record at p. 269.

[52]*Id*. at p. 21.

because they are unsupported by objective medical findings.  The rheumatologist reported tender points, but found "[n]o active synovitis or joint effusions."[53]  That is, the rheumatologist found no inflammation of fibrous or connective tissue characterizing fibromyalgia.  The lack of supporting medical findings undermines the opinion, but also highlights a fallacy.

The reported restrictions contradict treatment standards.  Fibromyalgia in itself does not prevent standing, walking, lifting, or sitting; instead, it causes muscle pain, fatigue, and tender points.  Those symptoms, in turn, could be severe enough to limit standing, walking, or sitting.  Reporting disabling limitations in those functions contradicted a medically-recognized treatment for fibromyalgia: physical exercise.  Medical literature universally recognizes aerobic exercise as one of the most effective treatment options.  Medical professionals agree that physical exercise may be hard at first, but regular physical exercise reduces fibromyalgia pain.  Reporting that a person cannot stand, walk, or sit contradicts medical standards for treating fibromyalgia, because the report means that a person cannot do what she must do to improve.

Viewed as a whole, the rheumatologist's treatment notes reflect an effort to establish a causal connection between Knox's job and fibromyalgia.  Initially, the

---

[53]*Id*. at p. 281 (Nov. 1, 2010) & p. 271 (Mar. 24, 2011).

rheumatologist characterized Knox's symptoms as "suggestive" of fibromyalgia.[54]  Less than two weeks later, the rheumatologist diagnosed "[f]ibromyalgia syndrome secondary to repetitive muscle strain involvement of the neck and shoulders from assembly line work[] at Lennox for many years."[55]  According to the rheumatologist, Knox's "job working on an assembly line at Lennox was the likely main contributor (>50%) to the development of her current injury and need for [treatment] within a reasonable degree of medical certainty."[56]  Subsequent treatment notes attribute fibromyalgia to repetitive muscle strain, so as to support a workplace injury.[57]  Although treatment notes reflect a causal connection between Knox's symptoms and her job, medical literature uniformly states that the cause of fibromyalgia is unknown.  Characterizing fibromyalgia as a workplace injury, when the medical community recognizes no known cause, undermines the objectivity of the reported limitations.  The reported limitations in sitting, standing, and walking were entitled to no greater weight.

**The pain specialist's opinion is unsupported**.  The pain specialist reported even more restrictions than the rheumatologist, but based on back pain.[58]  The ALJ gave the

---

[54]*Id*. at p. 282.

[55]*Id*. at p. 278.

[56]*Id*. at p. 312.

[57]*Id*. at p. 271-72, 274 & 393.

[58]*Id*. at p. 448.

opinion no weight.[59]  The only basis for the reported limitations is Knox's subjective

reports, because the pain specialist had not seen Knox during the preceding 40 days.[60]

Medical findings for earlier exams[61] do not support the reported limitations.  The

opinion is also inconsistent with other evidence.  The pain specialist reported that Knox

could use her arms for reaching for eight hours per work day, but Knox complained

about pain in both shoulders and underwent right-shoulder surgery.  The pain

specialist reported that Knox could use her hands and fingers to grasp, turn, and twist

objects for eight hours in a work day.  If that was accurate, Knox could do sedentary

work.  The pain specialist's opinion warranted no special weight.

**The record suggests no need for a mental diagnostic evaluation**.  Knox suggests

the ALJ should have ordered a mental diagnostic evaluation, but no evidence suggests a

severe mental impairment.  Knox did not base her claim on mental impairment.  None

of her doctors recommended mental health treatment.[62]  Knox had the means to obtain

---

[59]*Id*. at p. 21.

[60]*Compare id*. at p. 397-98 (last exam on June 30, 2011) *with id*. at pp 448-52
(reporting limitations on Aug. 9, 2011).

[61]*See id*. at pp. 253-57, 372-76 & 399-404.

[62]*Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) ("Some of the factors an ALJ
may consider when determining a claimant's mental impairments are (1) the claimant's
failure to allege mental impairments in his complaint, (2) failure to seek mental
treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating
mental impairment.").

mental health treatment had she needed it.  Without evidence alerting the ALJ to the possibility of a severe mental impairment, no need existed for a mental diagnostic evaluation.[63]

**Vocational evidence supports the decision**.  The ALJ asked a vocational expert about the availability of sedentary work that required occasional overhead reaching and pushing/pulling with the right arm.  The vocational expert identified unskilled office clerks like telephone information clerk and unskilled office workers like document preparer.[64]  Knox questions whether those jobs exists  in significant numbers, but the identified jobs were exemplary jobs, not the only sedentary jobs.  The vocational expert's response shows work existed that Knox could do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[65]  Because such work existed, Knox was not disabled under social security law.  A reasonable mind would accept the evidence as adequate to support the ALJ's decision, because the medical evidence shows no serious functional limitation preventing sedentary work and because the vocational expert identified

---

[63]*Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) ("If sufficient evidence alerts the ALJ to the possibility of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairment(s)." ).

[64]SSA record at p. 62.

[65]42 U.S.C. § 1382c(a)(3)(B) (defining "disability" under social security law).

available work.

## Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind would accept the evidence as adequate to show Knox could have done some sedentary work during the challenged 13 months.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Knox's request for relief (docket entry # 1) and AFFIRMING the Commissioner's decision.

Dated this 28th day of October 2014.

_____

United States Magistrate Judge